UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DONALD G. WHITTINGTON, et al. | CIVIL ACTION NO. 06-1068 (LEAD)<br>CIVIL ACTION NO. 06-2129 (MEMBER) |
| -vs- | JUDGE DRELL |
| PATRIOT HOMES, INC., et al. | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is a motion for summary judgment (Doc. 60) filed by Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") concerning its counter-claim against the plaintiffs in the instant suit, Donald G. Whittington, Jr. and Jessica M. Whittington ("the Whittingtons").  For the reasons set out below, Vanderbilt's motion is GRANTED.

### BACKGROUND

The Whittingtons purchased a mobile home manufactured by defendant Patriot Homes ("Patriot") from defendant Harvest Investments Corp. ("Harvest") in 2002.  The purchase was financed through an agreement with defendant Chase Bank USA, N.A. ("Chase"), which was effected on May 6, 2002 ("Finance Contract # 1") (Exh. A to Doc. 63, Whittingtons' Opp.; Bates # 108-115).  Finance Contract # 1 prominently contains the following language ("the Notice") on the signature page:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
> SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD
> ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED
> PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY

HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY
THE DEBTOR HEREUNDER.

(Exh. A to Doc. 63, Whittingtons' Opp.; Bates # 115).

On July 15, 2003, the Whittingtons refinanced the loan through Chase, at which
point Finance Contract #1 was replaced with a new agreement ("Finance Contract #
2"). The same notice language was present in a box on the signature page of Finance
Contract # 2, but the box also clearly stated: "The Notice below applies to this consumer
loan if an 'X' appears in the box to the left and Lender has signed at the right." As we
noted in our ruling entered August 30, 2006, the box on Finance Contract # 2 does
contain an "X," but there is no signature at the right; thus, we held, the Notice was not
effective according to the face of the document. (Doc. 26, pp. 3-4).

On December 6, 2004, Chase assigned its rights in Finance Contract # 2 to
Vanderbilt. On May 17, 2006, the Whittingtons filed suit in the 7th Judicial District Court
for Concordia Parish, Louisiana, and on June 13, 2006, the Whittingtons filed a first
supplemental and amending petition in the state court. In broad terms, the
Whittingtons' claims are related to alleged defects in the manufactured home that they
purchased in 2002, which defects caused a serious and persistent mold problem.

The suit was timely removed to this Court on June 26, 2006. On July 14, 2006
Vanderbilt filed its answer and counter-claim against the Whittingtons, and on January
16, 2007, Vanderbilt's amended counter-claim was entered in the record. On August 30,
2006, our ruling (Doc. 26) and judgment dismissing the Whittingtons' principal claims

against Vanderbilt was entered in the record.[1] Thus, Vanderbilt's counter-claim against the Whittingtons is now the only remaining claim between those parties, and it is the subject of the instant motion for summary judgment (Doc. 60).

The dispute over Vanderbilt's counter-claim centers on Finance Contract # 2, since that is what Vanderbilt purchased from Chase. The specifics of Finance Contract # 2 and the bases for the Vanderbilt's counter-claim are set out as follows in Vanderbilt's statement of facts as to which there is no dispute:

4.     Principal and interest on the Whittington Note [Finance Contract # 2] was payable monthly in the amount of $464.15 beginning August 14, 2003 and continuing thereafter where the entire indebtedness would mature and become fully due and payable 226 months later on June 14, 2002.

5.     The Note provides that the Whittingtons "must obtain property insurance covering physical damage to and loss of the Collateral" and that if they "fail to pay [the] insurance premiums on time or if [they] fail to maintain insurance coverage, [Vanderbilt] may at [its] sole option obtain or renew and pay premiums for the insurance coverages" and that in such an event the Whittingtons will "repay the cost of any [such insurance] with interest at [8.75%] . . . ."

6.     The Note further provides that (a) the Whittingtons will be in default of their obligations under the Note if they "(1) do not make a payment . . . on time; or (2) break a promise under this note," that (b) if they Whittingtons "do not cure [this] default during the thirty (30) day cure period . . . [Vanderbilt] may at [its] sole option require immediate payment of the entire unpaid balance due hereunder, together with accrued charges," and that (c) Vanderbilt may also "require immediate payment of [the] loan if anything else happens that [Vanderbilt feels] endangers any Collateral or the ability of the Whittingtons to pay."

7.     When Vanderbilt purchased the Whittington note, they were fully performing their obligations thereunder. However, on information

---

[1] Later, the Whittingtons voluntarily dismissed without prejudice Harvest, the seller of the manufactured home. (Doc. 36).

3

and belief, the Whittingtons vacated their home as early as February of 2006 and are currently residing in another home that they are renting. The Whittingtons' insurance expired on April 8, 2006. The Whittingtons are currently overdue for all monthly payments, at $464.14 [sic] per installment, since their May 24, 2006 payment. As of November 30, 2006, the total delinquent amount was $3246.05.

8.     In order to protect its interest in the Manufactured Home and insure against its loss, Vanderbilt had to force place a lien holder's risk policy on the Manufactured Home ("Force Placed Policy") at a cost of $1,556.00. Vanderbilt avers it is entitled to recover the costs of the Force Placed Policy.

9.     Through undersigned counsel, Vanderbilt put Makers on notice of the above-listed defaults by virtue of Vanderbilt's Supplemental and Amended Counter-claim, filed on or around January 11, 2007.

10.    Makers have not cured their default since January. Accordingly the entire amount of the Note in the principal sum of $48,030.14 and all accrued interest remains outstanding and unpaid.

11.    The above outstanding principle [sic] and accrued interest and a negative escrow balance in the amount of $54,331.75 with per diem of $11.51 per day are due.

12.    The Note provides that the Whittingtons will pay Vanderbilt's court costs and attorney's fee if Vanderbilt has to initiate a collection action. Vanderbilt avers it has been necessary to collect on the Whittington Note via a lawsuit.

13.    The Note further provides that in order to protect Vanderbilt if the Note is not paid, the Whittingtons give Vanderbilt a security interest in the Manufactured Home, described as a Pre-owned 2002 Patriot Southridge, Serial No. ISRP17558ABAL, and that this security interest 'also covers additions, substitutions, and proceeds.'

(Doc. 60-3, pp. 1-3) (most alterations in original). Because those particular facts evidently

are not in dispute and are supported by the record, we accept them as true.

Vanderbilt argues that the Notice in Finance Contract # 2 is ineffective because

of the facial defects and does not preclude Vanderbilt from achieving holder in due

course status under La. R.S. § 10:3-302.  Furthermore, Vanderbilt argues (and presents evidence) that it took the note for value, in good faith, and without notice of any claims or defenses, so it did achieve holder in due course status.  Thus, Vanderbilt argues, because the note is not subject to any certain limited defenses, it is entitled to judgment on the note based on the undisputed facts set out above.

In opposition, the Whittingtons and Patriot admit that Vanderbilt took Finance Contract # 2 for value and do not allege that Vanderbilt actually had notice of any underlying claim, defense, or default at the time the note was taken.  However, both the Whittingtons and Patriot strenuously argue that the language of the Notice on Finance Contract # 2 should somehow preclude holder in due course status.  We address their arguments below.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id.  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986).  If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)).

In the analysis, all inferences are drawn in the light most favorable to the nonmovant. <u>Herrera v. Millsap</u>, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. <u>Brock v. Chevron U.S.A., Inc.</u>, 976 F.2d 969, 970 (5th Cir. 1992).  Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." <u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082, 1086 (5th Cir. 1994) (<u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)).

## ANALYSIS

Vanderbilt argues that it is a holder in due course of Finance Contract # 2 under Louisiana commercial law and that such status entitles it to judgment on its counter-claim.  There are two questions for us to answer, though they are really two parts of the same question.  First, is the Notice in Finance Contract # 2 effective, notwithstanding the plain language to the contrary in the contract itself?  Second, assuming that the Notice is ineffective on its own and that Vanderbilt could achieve holder in due course status, was Vanderbilt somehow precluded from doing so?

### The Notice

We have already answered the first question.  In our ruling entered August 30, 2006, we held that because the language of Finance Contract # 2 unambiguously required that there be both an "X" and the lender's signature in order to make the Notice effective, the lack of a signature meant that the Notice does not apply to the contract. [2]

---

[2] Although the Whittingtons assert that the contract is ambiguous because it was filled out with an "X" but no signature, we reiterate that the contract itself is not ambiguous. It plainly requires both an "X" and a signature to effect the Notice, and that clear requirement was not met in this case.

6

Both the Whittingtons and Patriot argue that because the notice is required by a regulation promulgated by the Federal Trade Commission ("FTC"), it should be read into Finance Contract # 2 notwithstanding that it is ineffective according to the contract's own plain terms.  The regulation at issue is 16 C.F.R. § 433.2, which provides in full:

> In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:
>
> (a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
>
> or,
>
> (b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Id.

7

  
We cannot agree with that argument.  A plain reading of the regulation shows that, although it is unlawful to handle a consumer credit contract that fails to include the required Notice, the regulation itself does not automatically insert the required language into those contracts.  Indeed, it would be <u>impossible</u> to violate the regulation if the required Notice were automatically read into every consumer credit contract.

Case law supports this plain reading as well.  In 1980 the Louisiana Supreme Court decided a pair of cases which remain highly instructive.  Most applicable to this case, the Court explained the consequences of the failure to include the Notice in a consumer credit contract as follows:

> 16 C.F.R. 433 does not purport to make the subsequent holder of a consumer credit contract automatically subject to the claims and defenses which the debtor could assert against the seller of the goods or services. Rather, the federal regulations merely declare it an unfair trade practice for a seller to accept the proceeds of a purchase money loan unless the consumer credit contract includes the preservation of defenses language, and the regulations further provide a penalty for violation.  It is the inclusion of the required language that, by making the promise to pay conditional, prevents a subsequent holder from becoming a holder in due course.

> If this transaction was a consumer credit contract, then the seller may be subject to a penalty for violation of the regulation which requires the preservation of defenses language. But plaintiff, who has established that it is otherwise a holder in due course, is not affected by the seller's acceptance of the purchase money loan proceeds without including the required language.

<u>Capital Bank and Trust Co. v. Lacey</u>, 393 So. 2d 668, 669 (La. 1980) (footnote omitted).

Interestingly, the Court decided a case the same year which was virtually the mirror image of <u>Capital Bank and Trust Co</u>. In <u>Jefferson Bank and Trust Co. v. Stamatiou</u>, 384 So. 2d 388 (La. 1980), the contract in question <u>did</u> include the Notice set out in 16

C.F.R. § 433.2.  However, because the contract involved a business purchase, it clearly

was not a "consumer credit contract" such that Section 433.2 would require the Notice.

Nevertheless, the Court upheld the Notice, reasoning:

> Under the provisions of the Civil Code, parties are free to govern their relationships through their contracts, and the contractural [sic] provisions have the effect of law on the parties . . . .  That the parties to the contract mistakenly asserted that it was a consumer credit contract ("any holder of this consumer credit contract") is of little consequence. In looking at the contract, there was nothing on the face of the instrument to indicate that this was not a "consumer credit contract."  The assignee/holder was put on notice that all defenses were available to the buyer against him at the time he acquired the instrument.  In looking at the face of the instrument, plaintiff could not have expected to be a holder in due course, and is not now entitled to be so treated.  At best the contract is ambiguous and is surely not to be construed against the purchaser who did not confect it.

Id. at 391 (citations omitted).

In this case, Finance Contract # 2 unambiguously requires both an "X" and the

lender's signature in order to make the Notice effective, but the signature is absent. [3]

Thus, under the plain terms of the contract, the Notice does not apply.  Whether the

failure to include the Notice violated 16 C.F.R. § 433.2 is, unfortunately, irrelevant to this

case, since violation of the FTC regulation does not give rise to a private cause of action,

only enforcement by the FTC itself.  See, e.g., Bartels v. Alabama Commercial College,

Inc., 918 F.Supp. 1565 (S.D. Ga. 1995), aff'd in part, rev'd in part, 189 F.3d 483 (11th Cir.

---

[3] We are also persuaded by the FTC Bureau of Consumer Protection's "Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses," 41 Fed. Reg. 20022-27 (1976), which provides:

> The requirement that a contract "contain" the Notice is not satisfied if the text of the Notice is printed in the contract in conjunction with additional recitals which limit or restrict its application.  Where the text of the Notice is qualified by additional language, the contract fails to "contain" the required Notice.

Id. at 20023.

1999), <u>cert. denied</u>, 528 U.S. 1074 (2000).  Whether or not the FTC regulation was violated, the Notice cannot automatically be read into Finance Contract # 2.  Here, the Notice is plainly ineffective on the face of the contract, so Vanderbilt is not precluded on the basis of that Notice from achieving holder in due course status.[4]

Holder in Due Course Status

The second question is whether Vanderbilt achieved holder in due course status under Louisiana commercial law.  The requirements for holder in due course status are set out in La. R.S. § 10:3-302, which provides in relevant part:

> (a) Subject to Subsection (c) and R.S. 10:3-106(d), "holder in due course" means the holder of an instrument if:
>
>> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>>
>> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in R.S. 10:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in R.S. 10:3-305(a).

<u>Id.</u>

The primary benefit of holder in due course status is freedom from most defenses:

---

[4]  Equitably, the result to a consumer, uneducated in the way of commercial financing, is a harsh awakening, because the C.F.R. provision would, on its face, appear remedial.  Our analysis shows otherwise, however, and in this case there is no legal or proper way to "turn a sow's ear into a silk purse."

(a) Except as stated in Subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

> (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

> (2) a defense of the obligor stated in another Section of this Chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

> (3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in Subsection (a)(1), but is not subject to defenses of the obligor stated in Subsection (a)(2) or claims in recoupment stated in Subsection (a)(3) against a person other than the holder.

La. R.S. § 10:3-305(a)-(b).

Because no one alleges that any § 3-305(a)(1) defenses are available to the Whittingtons, if Vanderbilt achieves holder in due course status, it will be entitled to payment on the note based on the uncontroverted facts set out above.  It is undisputed that Vanderbilt took Finance Contract # 2 for value, and it is likewise undisputed that at the time it took the note, it had no notice of any default, unauthorized signature, alteration, claim, or defense that the Whittingtons might have in fact.

11

Essentially, the only dispute raised is whether the otherwise ineffective Notice provision may preclude holder in due course status based on lack of good faith. To agree with this argument would accomplish under the commercial law what the FTC regulation itself could not accomplish: it would read into Finance Contract # 2 the FTC Notice. Our above analysis answers the question. Because 16 C.F.R. § 433.2 cannot insert the Notice into a contract, the applicability of the Notice depends on normal rules of contract construction. Here, because the Notice is plainly ineffective on the face of Finance Contract # 2, Vanderbilt, as purchaser, did not lack good faith on that basis. Neither the Whittingtons nor Patriot asserts any other basis for finding that Vanderbilt either lacked good faith or otherwise failed to satisfy the requirements for holder in due course status.

The only arguments offered against Vanderbilt's assertion that it is a holder in due course of Finance Contract # 2 rests on the ineffective Notice, and those arguments must fail. No evidence is offered to rebut Vanderbilt's proffered evidence that it took the note in good faith, for value, and without notice of any of the things set out in La. R.S. § 10:3-302(a)(2)(iii)-(vi). Consequently, we must find that Vanderbilt achieved holder in due course status when it purchased Finance Contract # 2 from Chase on December 6, 2004. Because Vanderbilt has shown that it is entitled to judgment, and because there is no evidence that the Vanderbilt's claim is subject to any of the limited defenses set out in La. R.S. § 10:3-305(a)(1), Vanderbilt is entitled to judgment as a matter of law on its counter-claim.

12

**CONCLUSION**

The Notice set out in Finance Contract # 2 is ineffective on the face of the contract, and nothing in the FTC regulations permits it to be inserted into the contract. Likewise, the ineffective Notice alone cannot preclude a holder from achieving holder in due course status.   Accordingly, because there is undisputed evidence that Vanderbilt met the requirements for achieving holder in due course status and that its claim is not subject to any of the limited defenses set out in La. R.S. § 10:3-305(a)(1), Vanderbilt's motion for summary judgment (Doc. 60) is GRANTED.

By separate judgment, the Court will award Vanderbilt the relief sought, which is supported by record evidence and undisputed by either the Whittingtons or Patriot: (a) the full amount of FIFTY-FOUR THOUSAND THREE HUNDRED THIRTY-ONE DOLLARS AND 75/100 ($54,331.75), with per diem of ELEVEN DOLLARS AND 51/100 ($11.51) per day; (b) all costs of collection, including attorney's fees and court costs; and (c) recognition that Vanderbilt has a security interest in the Whittingtons' pre-owned 2002 Patriot Southridge manufactured home, Serial Number ISRP17558ABAL, and additions, substitutions, and proceeds.

SIGNED on this 10 day of April, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE