UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DONALD G. WHITTINGTON, et al.

CIVIL ACTION NO. 06-1068 (LEAD)
CIVIL ACTION NO. 06-2129 (MEMBER)

-vs-

JUDGE DRELL

PATRIOT HOMES, INC., et al.

MAGISTRATE JUDGE KIRK

RULING

Before the Court is a motion for summary judgment (Doc. 85) filed by defendant Patriot Homes, Inc. ("Patriot"), seeking dismissal of this consolidated suit by the plaintiffs, Donald G. Whittington, Jr. and Jessica M. Whittington ("the Whittingtons"). For the reasons set out below, Patriot's motion is DENIED.

BACKGROUND

The Whittingtons purchased a manufactured home built by defendant Patriot Homes ("Patriot") from defendant Harvest Investments Corp. ("Harvest") in 2002.  The purchase was financed through a May 6, 2002 agreement with defendant Chase Bank USA, N.A. ("Chase") and refinanced through Chase on July 15, 2003.  On December 6, 2004, Chase assigned its rights in the refinancing contract to Vanderbilt.

In broad terms, the Whittingtons' alleged problems are as follows:  Shortly after moving in, they noticed mold growing on the ceiling and walls of certain parts of the

home.  They contacted Southridge Homes ("Southridge")[1], who cleaned the affected areas.  However, the mold returned and persisted, and moisture stains began showing up in parts of the home.  The Whittingtons repeatedly contacted Southridge and Harvest, who sent representatives from time to time over the period from 2002 to 2006 and made several repair attempts.  Ultimately, the Whittingtons were not satisfied with those attempts or with the continuing mold and moisture problems that led to them, and they decided to sue.

On May 17, 2006, the Whittingtons filed suit in the 7th Judicial District Court for Concordia Parish, Louisiana, against Patriot, Harvest, Chase, and Vanderbilt, asserting state law claims, including claims in redhibition and for unfair and deceptive acts or trade practices.  On June 13, 2006, the Whittingtons filed a first supplemental and amending petition in the state court.  That suit was timely removed to this Court on June 26, 2006 and was assigned Docket Number 06-1068 ("the lead case").

On September 28, 2006, the Whittingtons filed a second state court petition in the 7th Judicial District Court for Concordia Parish, Louisiana, against Patriot and Harvest only, alleging essentially the same redhibitory defects.  That suit was timely removed to this Court on November 9, 2006 and was assigned Docket Number 06-2129 ("the member case").  On January 17, 2007, we consolidated the cases under Docket Number 06-1068.

Various procedural developments have streamlined the remaining parties and issues significantly.  We dismissed all claims against Vanderbilt and Chase, and we

---

[1] Southridge's exact relationship to the defendants is not explained in the complaint.

granted summary judgment in favor of Vanderbilt on its counter-claim against the Whittingtons. The Whittingtons voluntarily dismissed their claims against Harvest in the lead case, on the basis that Harvest no longer exists as a legal entity.[2] Consequently, Patriot appears to be the only remaining party in existence in both the lead and member suits.

Patriot's motion for summary judgment (Doc. 85) now before us is based entirely on Patriot's assertion that the Whittingtons' claims are preempted by the Manufactured Housing Construction and Safety Standards Act ("MHCSSA"), 42 U.S.C. § 5401 et seq., and its associated regulations promulgated by the United States Department of Housing and Urban Development ("HUD"), 24 C.F.R. § 3280 et seq. and 24 C.F.R. § 3282 et seq. (Doc. 85, p. 2). In response, the Whittingtons argue that their claims are not preempted by federal law. We address these arguments below.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence

---

[2] We note with both bemusement and amusement that although the Whittingtons filed that voluntary motion in the lead case on September 26, 2006, they filed their second state court petition (which became the member case) two days later, on September 28, 2006, including Harvest—the apparently defunct entity—as a defendant. Thus, Harvest remains at least a nominal defendant in the member case.

tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).  Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## ANALYSIS

Patriot argues that the Whittingtons' claims are preempted under the MHCSSA and the associated HUD regulations, based on Patriot's formulation of the following allegedly undisputed fact:

5.

> Plaintiffs [sic] only complaint regarding the manufacture of the manufactured home is regarding the placement of the vapor barrier on the living side of the external walls, as opposed to the exterior side.  (See Deposition of plaintiff's expert, Bobby Parks).

(Doc. 85-3—Patriot's statement of undisputed facts, p. 2).

Patriot relies primarily on reasons for judgment entered in conjunction with a judgment dismissing certain defendants in another Western District of Louisiana case, Guidroz v. Champion Enterprises, Civil No. 05-1148 (W.D. La. 1/26/2007), attached as an

exhibit to its memorandum in support.  (Doc. 85-6).  We are grateful that the opinion is easily accessible to the parties in this case, because we agree with the opinion in every respect.   The magistrate judge in that case, in Lafayette, has stated the law of preemption in the context of the MHCSSA and its regulations so well that we can add nothing more to its analysis with respect to the facts of that case.  Furthermore, even though the application of the Guidroz analysis differs for the facts of this case, we still rely in large part on the excellent condensation of the law contained in that opinion.

If Patriot were correct in claiming that the Whittingtons' "only complaint regarding the manufacture of the manufactured home is regarding the placement of the vapor barrier on the living side of the external walls, as opposed to the exterior side" (Doc. 85-3, p. 2), the facts of this case would line up so well with the facts of Guidroz that we could—arguably—simply adopt the rationale of that opinion in this case.  As the Guidroz opinion correctly found, the issue of whether the vapor barrier (or vapor retarder) should have been placed on the living side or exterior side of the external wall is impliedly preempted, but not expressly preempted, by the MHCSSA and the HUD regulations, specifically under 24 C.F.R. § 3280.504(b) (relating to vapor retarders). Simply put, under these federal regulations, the manufacturer may choose which side of the interior wall to use for placement of the vapor retarder.

However, it is clear from the record that Patriot's characterization of the Whittingtons' "only complaint" is false.  Unlike the plaintiffs' original complaint in Guidroz, which focused on the vapor barrier and its placement on the living side of the wall to the exclusion of other causes for the plaintiffs' damages, the Whittingtons'

complaint, as amended, does not focus on that one cause.  Instead, the Whittingtons'

complaint more generally alleges a redhibitory defect but does not name the exact cause

of that defect.  The evidence submitted both in support of and in opposition to Patriot's

motion for summary judgment does allege more specific causes, and those causes are

not limited to (and, evidently, do not even include) the issue of whether the vapor barrier

should have been on the exterior side versus the living side of the exterior walls.

Patriot cites two pages from the deposition of Bobby Parks, the Whittingtons'

expert witness, in support of its motion.  The most relevant portions read:

> Q:   Okay.  So those were the two problems that you noticed.  The
> structural softening which you believed to be caused by the
> improper placement of the vapor barrier, and the visible mold which
> you believe to be caused by the air and the duct leakage problem.
> Correct?
>
> * * *
>
> A:   . . . Yeah, I — I think I agree with what you're saying.
>
> * * *
>
> A:   The wall structure and the duct leakage were the two
> manufacturing issues that I have concerns with.

(Doc. 85-5, pp. 2-3; Deposition of Bobby Parks, pp. 76-77).

Patriot apparently ignores the fact that, even in this two-page excerpt, Mr. Parks

mentions two distinct causes, as Patriot fails to mention the duct leakage problem at all

in its statement of undisputed facts.  Moreover, the deposition excerpt mentions

only "improper placement of the vapor barrier"; it does not mention how Mr. Parks

believed the vapor barrier was improperly placed.  Mr. Parks does not say in the excerpt

that the placement was improper because the vapor barrier should have been on the

exterior side versus in the living side of the wall.  Under the rationale of Guidroz, which

Patriot urges us to adopt, the Whittingtons' claim would only be barred if their sole complaint involved interior versus exterior placement. Whatever Patriot's statement of "undisputed" facts says, Patriot has failed to present evidence that this case fits the Guidroz mold.

On the other hand, the Whittingtons present ample evidence demonstrating that their claims do not involve the interior/exterior choice of placement for the vapor barrier. The Whittingtons apparently agree with Patriot that, if their sole complaint did involve that choice, Guidroz would apply. (Doc. 91, p. 3). That is good; we are all in agreement on that point. To clarify the issues, the Whittingtons have attached the affidavit of Mr. Parks to their opposition, and we will let Mr. Parks speak for himself:

> My understanding is that Patriot contends that I stated in my deposition that a manufacturer's use of a wall board with a vapor barrier of no greater than one perm, although allowed for by HUD's 24 CFR 3280.504 (b) (1), is in and of itself a defect. That regulation is known to me as the "(b) (1)" regulation. I do not contend such. My contention is that the utilization of the vinyl covered wall board, which is a vapor barrier, and which is present in the Whittington home, within the overall construction and design of that wall, as a continuous vapor barrier of less than one perm, and therefore not allowing moisture laden air to move around and/or through the wall panels, and thus contributing to excess moisture in the walls, is not an acceptable construction practice and does violate the HUD standard. A vapor barrier can be used on the living side of this home, and other manufactured homes, but when the wall design creates a continuous vapor barrier that traps moisture-laden air behind the wall, as in the majority of the Whittington home, it is a defect that caused the excess moisture. The use of the vapor barrier in and of itself is not a defect.
>
> This is demonstrated by the fact that, during one of the repairs by Patriot Homes, Inc., some of the walls were repaired using Kraft-backed, or paper-backed, wall insulation batts. The repair included the paper-backed insulation being "tucked" between the wall studs, thus allowing a space for air to move around the edges of the vapor barrier, through a "breathable" paper-faced wallboard (in place of the vinyl–faced wallboard) and into the living area, preventing the moisture build-up. This is an

7

approved and commonly used method of construction within the manufactured housing industry.  This method of wall construction has stopped the accumulation of excess moisture in those sections of the Whittington's walls, which moisture would be necessary for mold growth. As illustrated in my reports, there was no evidenced moisture accumulation behind those repaired walls, thus eliminating concerns of mold growth.

\* \* \*

I stated in [Patriot's deposition excerpt] that proper overall wall construction can be accomplished by the manufacturer with the use of a vapor barrier, but not in the way it was done in the Whittington home.

Also, in my inspections I found that excess duct leakage was causing excessive air loss to the outdoors, causing a vacuum effect that was adding excessive, outside moisture-laden air to come into the exterior wall cavities.  This effect caused the moisture-laden air to be constantly moving into the walls, causing more moisture in the exterior wall cavities than would normally be there. . . . The negative pressure increases the moisture/mold problem because of the extra moisture-laden air it lets in. In my opinion, the failure to properly keep the duct system from this excess leakage is a manufacturing defect, also.

(Doc. 91-3) (emphasis in original).

We think that this situation, unlike that in Guidroz, is analogous to the "minimum standard of compliance" analysis found in cases like Choate v. Champion Home Builders Co., 222 F.3d 788 (10th Cir. 2000).  Section 3280.504(b) requires only that a vapor retarder be placed on the exterior wall, whether on the living side or the exterior side, and the Whittingtons do not assert that the interior/exterior choice should have been made in a certain way.  Rather, they assert that, however Patriot chose to comply, it could have designed that implementation in a way that avoided the redhibitory defect. See Guidroz at 22-29 (discussing implied preemption).[3]

---

[3] Also, let us not lose sight of the fact that 24 C.F.R. § 3280.504(b) is not the only regulation applicable here.  For instance, the general requirements for construction under the MHCSSA HUD regulations are formulated as follows: "All construction methods shall be in conformance with accepted engineering practices to insure durable, livable, and safe housing and shall

We agree with <u>Guidroz</u> that the MHCSSA and its regulations do not expressly preempt state causes of action, and we find no implied preemption under these facts. The mere existence of federal statutes and federal regulations is not enough to preempt state law causes of action. The MHCSSA and its regulations expressly preserve certain rights; notably, even "[c]ompliance with any Federal manufactured home construction or safety standard . . . does not exempt any person from any liability under common law." 42 U.S.C. § 5409(c). <u>See also</u> 24 C.F.R. § 3282.11(c) (". . . A State may establish or continue in force consumer protections, such as warranty or warranty performance requirements, which respond to individual consumer complaints and so do not constitute systems of enforcement of the Federal standards . . . ."). Alternatively, although violation of the federal standards does not give rise to a private federal cause of action, the violation may still constitute relevant negligent conduct for a state law cause of action. <u>See, e.g.</u>, <u>Richard v. Fleetwood Enterprises, Inc.</u>, 4 F.Supp.2d 650, 653-55 (E.D.Tex.1998); <u>Joseph v. Fluor Corp.</u>, 513 F.Supp.2d 664, 673 (E.D. La. 2007) (<u>citing</u> <u>Richard</u>). The legal framework here is significantly more complex than a stark binary choice between federal and state law.

After importing the careful and admirably clear analysis of <u>Guidroz</u>[4] and applying it to—and adjusting it for—the facts of this case, it is clear the Whittingtons' claims have

---

demonstrate acceptable workmanship reflecting journeyman qualify of work of the various trades."   24 C.F.R. § 3280.303(b).

[4] N.B.: The plaintiffs in <u>Guidroz</u> have since been allowed to amend their complaint to assert <u>non-preempted</u> claims. (Docs. 91-5 and 91-6). Thus, the <u>Guidroz</u> opinion does not constitute a "magic bullet" for Patriot, and the facts of this case demonstrate why that is true.

not been preempted by the MHCSSA or its regulations.  Accordingly, Patriot's motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, Patriot's motion for summary judgment (Doc. 85) is DENIED.

SIGNED on this 10th day of April, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE